UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON

JO-LYNN LEVERETT,

    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,

    Defendant.

Case No. 3:16-cv-217

District Judge Walter H. Rice
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) THE ALJ'S NON-DISABILITY FINDING BE FOUND UNSUPPORTED BY SUBSTANTIAL EVIDENCE, AND REVERSED; (2) THIS MATTER BE REMANDED TO THE COMMISSIONER UNDER THE FOURTH SENTENCE OF 42 U.S.C. § 405(g) FOR PROCEEDINGS CONSISTENT WITH THIS OPINION; AND (3) THIS CASE BE CLOSED**

---

This is a Social Security disability benefits appeal. Plaintiff challenges the Administrative Law Judge's ("ALJ") non-disability finding and conclusion that she is unentitled to Disability Insurance Benefits ("DIB"). This case is before the Court upon Plaintiff's Statement of Errors (doc. 7), the Commissioner's memorandum in opposition (doc. 8), Plaintiff's reply (doc. 9), the administrative record (doc. 6), and the record as a whole.[2]

**I.**

**A.**    **Procedural History**

Plaintiff filed an application for DIB asserting disability as of May 16, 2008. PageID 173. Plaintiff claims disability as a result of a number of impairments, including, *inter alia*,

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

[2] Hereafter, citations to the electronically-filed administrative record will refer only to the PageID number.

lumbar spine degenerative disc disease, degenerative joint disease of the left knee, residuals of a remote prior left shoulder strain, and depression. PageID 177-78.

After initial denials of her application, Plaintiff received a hearing before ALJ Gregory Kenyon on October 10, 2014. PageID 192-219. The ALJ issued a written decision on January 30, 2015 finding Plaintiff not disabled. PageID 173-84. Specifically, the ALJ's findings were as follows:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2013.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of May 16, 2008 through her date last insured of September 30, 2013 (20 CFR 404.1571 *et seq*.).

3. Through the date last insured, the claimant had the following severe impairments: lumbar spine degenerative disc disease, degenerative joint disease of the left knee, residuals of a remote prior left shoulder strain, and depression (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity ["RFC"] to perform sedentary work[3] as defined in 20 CFR 404.1567(a) except: (1) occasional crouching, crawling, kneeling, stooping, and climbing of ramps and stairs; (2) no climbing of ladders, ropes, and scaffolds; (3) no work around hazards such as unprotected heights or dangerous machinery; (4) frequent overhead reaching with the left upper extremity; (5) standing or walking for no more than 15 minutes at a time; (6) sitting for no more than 45 minutes at a time followed by a one to two minute period during which she would be permitted to stand and stretch; (7) limited to performing unskilled, simple, repetitive tasks; (8) occasional contact with co-workers, supervisors, and the public; (9) no fast paced production

---

[3] Sedentary work "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties." *Id.* § 404.1567(a).

work or jobs involving strict production quotas; and (10) limited to performing jobs in a relatively static work environment in which there are no more than occasional changes in the job duties or the work routine and which requires only occasional decision-making.

6. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born [in] 1978 and was 35 years old, which is defined as a younger individual age 18-44, on the date last insured (20 CFR 404.1563).

8. The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the dated last insured, considering the claimant's age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from May 16, 2008, the alleged onset date, through September 30, 2013, the date last insured (20 CFR 404.1520(g)).

PageID 173-84.

Thereafter, the Appeals Council denied review on May 18, 2016 making the ALJ's non-disability finding the final administrative decision of the Commissioner. PageID 60-65. Plaintiff then filed this timely appeal. *Cook v. Comm'r of Soc. Sec.*, 480 F.3d 432, 435 (6th Cir. 2007) (noting that, "[u]nder the Federal Rules of Appellate Procedure, [claimant] had 60 days from the Appeals Council's notice of denial in which to file his appeal").

B.  **Evidence of Record**

In his decision, the ALJ set forth a detailed recitation of the underlying medical evidence in this case. PageID 175-82. Plaintiff, in her Statement of Errors, also summarizes the evidence of record. Doc. 7 at PageID 936-40. The Commissioner, in response to Plaintiff's Statement of Errors, also summarizes the evidence of record. Doc. 8 at PageID 955-57. Except as otherwise noted herein, the undersigned incorporates the summary of evidence as set forth by the ALJ and Plaintiff.

## II.

A.  **Standard of Review**

The Court's inquiry on a Social Security appeal is to determine (1) whether the ALJ's non-disability finding is supported by substantial evidence, and (2) whether the ALJ employed the correct legal criteria. 42 U.S.C. § 405(g); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007). In performing this review, the Court must consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). When substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if substantial evidence also exists in the record upon which the ALJ could have found Plaintiff disabled. *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001). Thus, the ALJ has a "'zone of choice' within which he [or she] can act without the fear of court interference." *Id.* at 773.

The second judicial inquiry -- reviewing the correctness of the ALJ's legal analysis -- may result in reversal even if the ALJ's decision is supported by substantial evidence in the record. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[A] decision of the

Commissioner will not be upheld where the [Social Security Administration] fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Bowen*, 478 F.3d at 746.

### B. "Disability" Defined

To be eligible for disability benefits, a claimant must be under a "disability" as defined by the Social Security Act. 42 U.S.C. § 423(d)(1)(A). Narrowed to its statutory meaning, a "disability" includes physical and/or mental impairments that are both "medically determinable" and severe enough to prevent a claimant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *Id.*

Administrative regulations require a five-step sequential evaluation for disability determinations. 20 C.F.R. § 404.1520(a)(4). Although a dispositive finding at any step ends the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), the complete sequential review poses five questions:

1. Has the claimant engaged in substantial gainful activity?

2. Does the claimant suffer from one or more severe impairments?

3. Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments (the "Listings"), 20 C.F.R. Subpart P, Appendix 1?

4. Considering the claimant's RFC, can he or she perform his or her past relevant work?

5. Assuming the claimant can no longer perform his or her past relevant work -- and also considering the claimant's age, education, past work experience, and RFC -- do significant numbers of other jobs exist in the national economy which the claimant can perform?

20 C.F.R. § 404.1520(a)(4); *see also Miller v. Comm'r of Soc. Sec.,* 181 F. Supp.2d 816, 818 (S.D. Ohio 2001). A claimant bears the ultimate burden of establishing disability under the Social Security Act's definition. *Key v. Comm'r of Soc. Sec.*, 109 F.3d 270, 274 (6th Cir. 1997).

### III.

In her Statement of Errors, Plaintiff argues that the ALJ erred by failing to: (1) appropriately weigh the opinion of her treating physician, Cynthia Kallet, D.O., regarding her physical and mental limitations; (2) appropriately weigh the other medical opinions of record; and (3) find her credible. Doc. 7 at PageID at 944-951. Finding Plaintiff's first alleged error to be well taken, the undersigned does not address the merits of Plaintiff's remaining contentions, but directs that the ALJ reassess his findings on remand, including the weight accorded to all medical source opinions.[4]

Until March 27, 2017, "the Commissioner's regulations [that apply to this appeal] establish[ed] a hierarchy of acceptable medical source opinions[.]" *Snell v. Comm'r of Soc. Sec.*, No. 3:12-cv-119, 2013 WL 372032, at *9 (S.D. Ohio Jan. 30, 2013). In descending order, these medical source opinions are: (1) treaters; (2) examiners; and (3) record reviewers. *Id*. Under the regulations in effect prior to March 27, 2017, the opinions of treaters are entitled to the greatest deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2).

A treater's opinion must be given "controlling weight" if "well-supported by medically acceptable clinical and laboratory diagnostic techniques and . . . not inconsistent with the other

---

[4] Nevertheless, on remand, the undersigned directs that the ALJ assess Plaintiff's credibility anew following a meaningful explanation of the weight accorded to the medical source opinions.

substantial evidence in [the] case record." *LaRiccia v. Comm'r of Soc. Sec.*, 549 F. App'x 377, 384 (6th Cir. 2013). Treaters are entitled to greater deference because they "are likely to be . . . most able to provide a detailed, longitudinal picture of [a claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations[.]" 20 C.F.R. § 404.1527(c)(2). Even if a treater's opinion is not entitled to controlling weight, "the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also* 20 C.F.R. § 404.1527(c).[5]

After treaters, "[n]ext in the hierarchy are examining physicians and psychologists, who often see and examine claimants only once." *Snell*, 2013 WL 372032, at *9. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Record reviewers are afforded the least deference and these "non-examining physicians' opinions are on the lowest rung of the hierarchy of medical source opinions." *Id*. "The regulations provide progressively more rigorous tests for weighing opinions as the ties between

---

[5] In essence, "opinions of a treating source . . . must be analyzed under a two-step process, with care being taken not to conflate the steps." *Cadle v. Comm'r of Soc. Sec.*, No. 5:12-cv-3071, 2013 WL 5173127, at *5 (N.D. Ohio Sept. 12, 2013). Initially, "the opinion must be examined to determine if it is entitled to controlling weight" and "[o]nly if . . . the ALJ does not give controlling weight to the treating physician's opinion is the opinion subjected to another analysis based on the particulars of" 20 C.F.R. § 404.1527. *Id*.

the source of the opinion and the individual [claimant] become weaker." *Id*. (citing SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996)).

Unless the opinion of the treating source is entitled to controlling weight, an ALJ must "evaluate all medical opinions" with regard to the factors set forth in 20 C.F.R. § 404.1527(c), *i.e.,* length of treatment history; consistency of the opinion with other evidence; supportability; and specialty or expertise in the medical field related to the individual's impairment(s). *Walton v. Comm'r of Soc. Sec.*, No. 97-2030, 1999 WL 506979, at *2 (6th Cir. June 7, 1999).

Dr. Kallet first started treating Plaintiff in January 2002. PageID 750. In April 2008, an imaging study revealed that Plaintiff had bilateral neural canal stenosis at L4-S1 due to disc bulging. PageID 702. In June 2008, Dr. Kallet referred Plaintiff to neurosurgeon, Lyn J. Robbins, M.D., for a consultation regarding Plaintiff's back impairments and resulting pain. PageID 631. After diagnosing Plaintiff with herniated discs and lumbar stenosis at L4-S1, Dr. Robbins performed a fusion surgery on Plaintiff's spine. PageID 632. After the surgery, Plaintiff continued to experience a great deal of back pain. Plaintiff's lab work from May and August of 2008 evidenced an elevated sedimentation rate.[6] PageID 869, 650. More than two years later, an October 2010 MRI, ordered by Dr. Kallet, revealed disc space narrowing with mild marginal osteophyte formation[7] and facet arthropathy at L5-S1 consistent with degenerative disc disease and spondylosis. PageID 878. In August and October of 2011, Dr. Kallet noted that

---

[6] Sedimentation rate is a blood test that can reveal inflammatory activity in one's body. A sedimentation rate test is not a stand-alone diagnostic tool, but it can help the doctor diagnose or monitor the progress of an inflammatory disease, http://www.mayoclinic.org/tests-procedures/sed-rate/home/ovc-20207006.

[7] Osteophyte formations spurs are bony projections that develop along the edges of bones. The main cause of bone spurs is the joint damage associated with osteoarthritis. Mayoclinic.org, osteophyte formation definition, http://www.mayoclinic.org/diseases-conditions/bone-spurs/basics/definition/con-20024478.

Plaintiff had a decreased range of motion in her lumbar spine due to a lumbar strain. PageID 840, 844.

In December 2011, Dr. Kallet arranged for Plaintiff to consult with pain management specialist, Abdul Shahid, M.D. PageID 910. Dr. Shahid observed that Plaintiff's range of motion of the lumbar spine was severely restricted in flexion, extension, and bilateral rotation. PageID 911. He further found that palpitation of the lumbosacral region was significant for tenderness on the left side in the paraspinal region, bilateral facet loading was positive on the left side, and palpation of the left sacroiliac joint was positive for tenderness. *Id.* Dr. Shaid diagnosed Plaintiff with post-laminectomy syndrome of the lumbar region; sacroiliitis; displacement of lumbar intervertebral disc without myelopathy; other specified arthropathy; and lumbago. *Id*.

Dr. Kallet also treated Plaintiff for issues resulting from a work-related fall she suffered in 2005, which resulted in a meniscal tear in her left knee. In 2006, Dr. Kallet referred Plaintiff to Dr. Ceccarelli, an orthopedist who performed arthroscopic surgery on Plaintiff's left knee that October. PageID 842, 588-97. After surgery, Dr. Kallet noted that Plaintiff continued to have knee pain. PageID 842. Plaintiff participated in physical therapy and received cortisone injections to help with pain. PageID 807. However, despite these additional treatments, Plaintiff's pain in her left knee persisted. *Id*. In November 2011, Dr. Kallet referred Plaintiff to Aivars Vitols, D.O., for another arthroscopic surgery on her left knee. PageID 886. In March 2011, Dr. Kallet completed a basic medical form, where she opined that Plaintiff could do the following in an eight-hour work-day: stand for less than 15 minutes uninterrupted; sit for 15 minutes uninterrupted; and lift up to five pounds. PageID 805. Dr. Kallet further found that Plaintiff's ability to push/pull and bend were "markedly" limited, and her reaching was

9

"moderately" limited.[8] *Id.* In conclusion, Dr. Kallet found that Plaintiff was unemployable for a period of 12 months or more. PageID 806.

On May 23, 2012, Dr. Kallet completed an ability-to-work form. PageID 920. She opined that Plaintiff could stand and walk for 30 minutes to two hours in an eight-hour workday and sit for 30 minutes to two hours in an eight-hour workday provided she had the opportunity to alternate between sitting and standing. *Id.* Dr. Kallet also indicated that Plaintiff was unable to perform a number of work-related activities due to her mental health symptoms including: understanding, remembering, and carrying out instructions; maintaining attention and concentration; sustaining an ordinary routine; interacting appropriately with the general public; asking simple questions and asking for assistance; making simple decisions; and attending a two-hour appointment with the ability to sit and stand as needed. *Id.*

In weighing Dr. Kallet's opinions, the ALJ found that they were "not entitled to controlling or deferential weight" and, instead, found the opinions deserved "little weight." PageID 181. In so concluding, the ALJ found that Dr. Kallet's opinions were: (1) based on Plaintiff's subjective complaints rather than objective testing; (2) inconsistent with Plaintiff's daily activities; (3) inconsistent with the "minimal treatment" provided to Plaintiff, which consisted of "just prescriptions for pain medication"; and (4) undermined by the fact that Dr. Kallet "made no attempt to treat any of the underlying causes of the claimant's pain complaints." PageID 181.

The Court agrees with Plaintiff that the ALJ erred in assessing the weight to be reasonably accorded to those opinions. Initially, the Court notes that the ALJ failed to set forth

---

[8] Whereas "mild" and "moderate" functional limitations are generally considered "non-disabling," *see Sims v. Comm'r of Soc. Sec.*, 406 F. App'x 977, 980 (6th Cir. 2011), "marked" limitations are suggestive of disability. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(C); *Lankford v. Sullivan*, 942 F.2d 301, 307 (6th Cir. 1991).

the required controlling weight analysis when analyzing Dr. Kallet's opinions. *See Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 544 (6th Cir. 2004). Thus, the Court cannot determine whether the ALJ undertook the "two-step inquiry" required when analyzing treating source opinions. *See Gayheart v. Comm'r of Soc. Sec.,* 710 F.3d 365, 376-78 (6th Cir. 2013). The lack of explanation regarding the "controlling weight [analysis] hinders a meaningful review of whether the ALJ properly applied the treating-physician rule that is at the heart of this regulation." *Id.* at 377 (citations omitted). On this basis alone, reversal and remand is mandated. *See Aytch v. Comm'r of Soc. Sec.,* No. 3:13-cv-135, 2014 WL 4080075, at *4 (S.D. Ohio Aug 19, 2014).

Even assuming, *arguendo*, that the ALJ adequately conducted and explained the controlling weight test -- which the undersigned concludes he did not -- the ALJ nevertheless failed to provide good reasons for discounting the weight accorded to Dr. Kallet's opinions.

First, with regards to the ALJ's conclusion that Dr. Kallet improperly relied on Plaintiff's subjective allegations, such conclusion is belied by the record. PageID 181. The record is replete with clinical findings supporting Dr. Kallet's opinions, including her own clinical observations noted *supra* and those noted by consulting examiner Dr. Shahid, whose assessment Dr. Kallet read and relied upon. PageID 911. Accordingly, the undersigned finds the ALJ's reasoning in this regard unsupported by substantial evidence.

Second, the ALJ's conclusion -- that Plaintiff's daily activities were inconsistent with Dr. Kallet's opinions -- is unsupported by substantial evidence. The undersigned finds that, absent meaningful explanation by the ALJ, it is unclear how Plaintiff's report of "cleaning out her garage on her own" wholly undermines Dr. Kallet's opinions. PageID 65; *see Meece v. Barnhart,* 193 F. App'x 456, 465 (6th Cir. 2006) (finding "the fact that Plaintiff engages in

11

minor life activities not inconsistent with disabling" limitations). This is especially so in this case, where Plaintiff's attempt to clean out her garage caused her to experience lumbar strain and pain precipitating a visit to Dr. Kallet, where she documented that Plaintiff had a decreased range of motion in her lumbar spine. PageID 844. Third, the ALJ's characterization of Dr. Kallet's treatment of Plaintiff as "minimal" and consisting primarily of "prescribing Plaintiff pain medication" is belied by the record. PageID 181. Initially, the Court notes that, as Plaintiff's primary care physician, it is not clear what care the ALJ thought Dr. Kallet withheld from Plaintiff. Certainly, she could -- and did -- recommend that Plaintiff seek treatment with specialists for more invasive, non-conservative care. For example, Dr. Kallet specifically referred Plaintiff to neurosurgeon, Dr. Robbins, for treatment of her back pain. PageID 631. After diagnosing Plaintiff with herniated discs and lumbar stenosis at L4-S1, Dr. Robbins performed a fusion surgery on Plaintiff's spine in June 2008. PageID 632. Likewise, in October 2006 and October 2011, Plaintiff underwent arthroscopic surgeries on her left knee as a result of referrals from Dr. Kallet. PageID 58-97, 607, 886. Additionally, in December 2011, Dr. Kallet referred Plaintiff to pain management specialist Dr. Shahid. PageID 911. Accordingly, the undersigned finds the ALJ's conclusion in this regard is also unsupported by substantial evidence. *Cf. Pickett v. Astrue,* No. 3:10-cv-177, 2011 WL 1626559, at *8 (S.D. Ohio Apr. 28, 2011).

Fourth, with regards to the ALJ's conclusion that Dr. Kallet "made no attempt to treat any of the underlying causes of [Plaintiff's] pain complaints," such conclusion is contradicted by the record. PageID 181. As noted *supra*, Dr. Kallet repeatedly referred Plaintiff to other specialists in order to attempt to alleviate the underlying causes of her pain. *See* PageID 58-97,

607, 632, 886, 911. Accordingly, the undersigned finds the ALJ's reasoning in this regard also unsupported by substantial evidence.

Based upon the foregoing, the Court finds the ALJ's assessment of Dr. Kallet's opinions unsupported by substantial evidence and meriting reversal.

**IV.**

When the ALJ's non-disability determination is unsupported by substantial evidence, the Court must determine whether to remand the matter for rehearing or to award benefits. Generally, benefits may be awarded immediately "if all essential factual issues have been resolved and the record adequately establishes a plaintiff's entitlement to benefits." *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994); *see also Abbott v. Sullivan*, 905 F.2d 918, 927 (6th Cir. 1990). The Court may only award benefits where proof of disability is strong and opposing evidence is lacking in substance, so that remand would merely involve the presentation of cumulative evidence, or where proof of disability is overwhelming. *Faucher*, 17 F.3d at 176; *see also Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994).

Here, evidence of disability is not overwhelming. Accordingly, a Sentence Four remand for further proceedings is necessary so the ALJ can hold another administrative hearing and reasonably weigh the opinion evidence, including Dr. Kallet's opinions regarding Plaintiff's mental and physical limitations; review Plaintiff's credibility and allegations of disabling pain; and determine Plaintiff's RFC and disability status anew. *See* PageID 336-40.

# V.

**IT IS THEREFORE RECOMMENDED THAT**:

1. The Commissioner's non-disability finding be found unsupported by substantial evidence, and **REVERSED**;

2. This matter be **REMANDED** to the Commissioner under the Fourth Sentence of 42 U.S.C. § 405(g) for proceedings consistent with this opinion; and

3. This case be **CLOSED**.

Date: 6/9/2017              s/ Michael J. Newman
                            Michael J. Newman
                            United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).